MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. An employee of a Vicksburg, Mississippi, car wash business struck Derral Holmes in the head with a baseball bat. Holmes died as a result of the assault. The administratrix of Holmes’s estate filed a wrongful death suit in the Circuit Court of Warren County against Campbell Properties, Inc. and T & S Tunnel Express (hereinafter referred to collectively as “Campbell Properties”). The complaint alleged these entities owned and operated the car wash business, respectively. The lawsuit involved various underlying tort claims, including a premises liability claim.
 

 ¶ 2. Campbell Properties moved for summary judgment. Following a hearing, the circuit court granted Campbell Properties’ motion. On appeal, Holmes’s only assignment of error concerns the circuit court’s grant of summary judgment. Finding no error, we affirm.
 

 FACTS
 

 ¶ 3. Holmes was a regular customer of T & S Tunnel Express, a car wash in Vicksburg, Mississippi. Benjamin Brooks was employed there. On October 19, 2005, Holmes stopped by the car wash. After washing and vacuuming his vehicle, he walked up to Brooks and called him a “weak bitch.” Brooks responded by beating Holmes with a baseball bat.
 
 [1]
 
 Holmes died from his injuries four days later.
 

 ¶ 4. Corine Holmes, the administratrix of the estate,
 
 [2]
 
 sued Campbell Properties and Brooks on various tort causes of action. These claims included: (1) failure to provide reasonably safe premises; (2) failure to warn of foreseeable dangers known by the defendants;
 
 [3]
 
 (3) assault, battery, and negligence under the theory of respon-deat superior; and (4) negligent hiring and retention.
 
 [4]
 

 ¶ 5. Campbell Properties filed a motion for summary judgment, and Holmes responded. After conducting a hearing, the circuit judge determined no genuine issues of material fact existed and granted Campbell Properties’s summary judgment motion.
 
 [5]
 

 STANDARD OF REVIEW
 

 ¶ 6. We conduct a de novo review of a trial court’s grant or denial of a motion for summary judgment.
 
 Lewallen v. Slawson,
 
 822 So.2d 236, 237 (¶ 6) (Miss.2002) (citation omitted). Summary judgment is proper “if the pleadings, depositions, an
 
 *724
 
 swers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). In determining whether the trial court properly granted summary judgment, we view the facts in the light most favorable to the nonmovant.
 
 Robinson v. Singing River Hosp. Sys.,
 
 732 So.2d 204, 207 (¶ 12) (Miss.1999) (citation omitted).
 

 ¶ 7. The nonmoving party must diligently oppose summary judgment.
 
 Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.,
 
 519 So.2d 413, 415 (Miss.1988). Once a motion for summary judgment is made and supported, the nonmoving party “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or [otherwise], must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e).
 

 ¶ 8. Summary judgment must be granted when the nonmoving party “fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial.”
 
 Borne v. Dunlop Tire Corp.,
 
 12 So.3d 565, 570 (¶ 16) (Miss.Ct.App.2009) (citing
 
 Grisham,
 
 519 So.2d at 416). To withstand summary judgment, the nonmoving party must produce significant probative evidence of genuine issues for trial.
 
 Id.
 
 (citing
 
 Price v. Purdue Pharma Co.,
 
 920 So.2d 479, 485 (¶ 16) (Miss.2006)).
 

 DISCUSSION
 

 ¶ 9. On appeal, Holmes claims genuine issues of material fact exist on the premises liability claim. Holmes also contends genuine fact issues exist on the claims that Campbell Properties improperly trained its employees, negligently failed to control them, and failed to adequately regulate and govern their behavior.
 

 I. Premises Liability
 

 ¶ 10. In a premises liability action, the plaintiff must prove the familiar elements of duty, breach of duty, proximate cause, and damages in order to establish a prima facie case.
 
 Crain v. Cleveland Lodge 1532, Order of Moose, Inc.,
 
 641 So.2d 1186, 1189 (Miss.1994). There are two components to the element of proximate cause: (1) cause in fact and (2) legal cause.
 
 Glover ex rel. Glover v. Jackson State Univ.,
 
 968 So.2d 1267, 1277 (¶31) (Miss.2007);
 
 Davis v. Christian Bhd. Homes of Jackson, Miss., Inc.,
 
 957 So.2d 390, 404 (¶ 32) (Miss.Ct.App.2007). A defendant’s negligence is the cause in fact of an injury if, “but for the defendant’s negligence, the injury would not have occurred.”
 
 Glover,
 
 968 So.2d at 1277 (¶ 32) (footnote omitted). The negligence is the legal cause if the injury “is the type, or within the classification, of [injury] the negligent actor should reasonably expect (or foresee) to result from the negligent act.”
 
 Id.
 
 at (¶ 33). In other words, the negligence must be a “reasonably foreseeable consequence of the defendant’s negligence.”
 
 Id.
 
 at (¶ 34).
 

 ¶ 11. The first step in a premises liability action is to determine the status of the injured party. The injured party should be classified as an invitee, licensee, or trespasser. This determination can be a fact question for the jury.
 
 Leffler v. Sharp,
 
 891 So.2d 152, 156 (¶ 10) (Miss.2004). But if the facts are not in dispute, it is a question of law for the trial judge.
 
 Id.
 
 An invitee is a person who enters the premises of another in response to an “express or implied invitation of the owner or occupant for their mutual advantage.”
 
 Id.
 
 at (¶ 11). A licensee enters the premises “for his own convenience, plea
 
 *725
 
 sure, or benefit pursuant to ... license or implied permission[.]” A trespasser enters the premises “without license, invitation, or other right.”
 
 Id.
 

 ¶ 12. Under Mississippi law, a property owner is not the insurer of an invitee’s safety. Rather, he owes a duty to the invitee to keep the premises reasonably safe and, when not reasonably safe, to warn only of hidden dangers not in plain and open view.
 
 Corley v. Evans,
 
 835 So.2d 30, 37 (¶ 22) (Miss.2003). In contrast, the duty owed to a licensee or trespasser is the same — not to "willfully or wantonly injure such person.
 
 Leffler,
 
 891 So.2d at 157 (¶ 12).
 

 ¶ 13. The parties disagree over whether Derral Holmes had lost his status as an invitee at the time of the attack. The parties agree that when the assault occurred, Holmes had already finished vacuuming and washing his car. He had also moved his car somewhere to the side of the car wash but remained on the premises to smoke a cigarette. Though it is not entirely clear that Holmes had concluded his business and remained around solely for his own benefit, we find it unnecessary to decide his status. This issue is not determinative here because Holmes (the administratrix) failed to offer proof, by affidavit or otherwise, setting forth specific facts showing a genuine issue on the required causation element.
 
 [6]
 

 See
 
 M.R.C.P. 56(e). In short, even if the decedent remained an invitee of the car wash, we find Holmes failed to show the injuries were a reasonably foreseeable consequence of the alleged negligence committed by Campbell Properties.
 
 Glover,
 
 968 So.2d at 1277 (¶¶ 33-34).
 

 ¶ 14. Our supreme court has held a premises owner must employ reasonable care to protect an invitee from “reasonably foreseeable injuries at the hands of another.”
 
 Newell v. S. Jitney Jungle Co.,
 
 830 So.2d 621, 623 (¶ 6) (Miss.2002). An assault on the premises is reasonably foreseeable if the defendant had either: (1) “actual or constructive knowledge of the assailant’s violent nature,” or (2) “actual or constructive knowledge an atmosphere of violence existed on the premises.”
 
 Id.
 
 at (¶ 7). In assessing the “atmosphere of violence” prong, relevant factors include “the overall pattern of criminal activity prior to the event in question that occurred in the general vicinity of the defendant’s business premises,” and “the frequency of criminal activity on the premises.”
 
 Corley,
 
 835 So.2d at 38-39 (¶ 26) (quoting
 
 Gatewood v. Sampson,
 
 812 So.2d 212, 220 (¶ 14) (Miss.2002)).
 

 ¶ 15. Campbell Properties claimed it neither knew nor had reason to believe Brooks was dangerous. To support this position, Campbell Properties attached excerpts from the testimony given by the owner of the car wash during Brooks’s criminal trial. The owner testified that Brooks was his “best employee” and that he had “[n]ever had a problem” with him. Holmes failed to contradict Campbell Properties’ assertions about Brooks and offered no contrary evidence on the issue of proximate causation.
 

 ¶ 16. The only arguable evidence of causation is found in the affidavit of Holmes’s proposed expert, Fred Del Marva. However, the circuit court rejected Del Marva’s affidavit as conclusory and did not consider it in ruling on the summary judgment motion. Since Holmes does not take issue with the court’s exclusion of Del
 
 *726
 
 Marva’s affidavit on appeal, we find this issue is not properly before us, nor does it merit further discussion.
 

 ¶ 17. In addition, Campbell Properties’ discovery responses indicate it had no knowledge of any crimes on the premises within the past five years. We point out that Holmes failed to respond with any history of crimes on the property, and likewise did not contradict Campbell Properties’ assertion that it had no prior notice of any crime.
 

 ¶ 18. Instead, Holmes devotes almost all attention on the premises liability issue to arguing the decedent was an invitee of the car wash. While this may be true, again, it is not determinative here because the party with the burden of proof must show a genuine issue of material fact exists as to every element of its claim.
 
 See, e.g., Davis,
 
 957 So.2d at 398-99 (¶ 16). Otherwise, summary judgment is proper.
 
 Id.
 
 Here, Holmes failed to offer any genuine issue of fact that Brooks’s assault was foreseeable. Because the circuit court properly found there had been no notice of any dangerous condition at the car wash, causation is lacking. Thus, the trial court properly granted summary judgment on the premises liability claim.
 

 II. Failure to Train
 
 [7]
 

 ¶ 19. Holmes next claims Campbell Properties failed to adequately train Brooks. We first note that Holmes’s allegation that neither the circuit court nor Campbell Properties addressed the failure to train issue is simply incorrect. First, Campbell Properties responded to the failure to train allegation in its rebuttal to Holmes’s response to the summary judgment motion. Specifically, Campbell Properties contended it was absurd to suggest it should have trained its employees regarding the use of a baseball bat. Campbell Properties also pointed out there was no evidence a baseball bat was used as part of Campbell Properties’ business. Rather, it was simply a piece of sports equipment left behind by a customer of the car wash that was being held in the “lost and found” at the time of the incident. Second, the circuit court granted summary judgment as to each cause of action in Holmes’s amended complaint, thereby granting summary judgment on the allegations therein, including the failure to train allegation.
 
 [8]
 

 A. Foradori
 

 ¶ 20. Holmes relies heavily on the Fifth Circuit’s decision in
 
 Foradori v. Harris,
 
 523 F.3d 477 (5th Cir.2008) (diversity case applying Mississippi law), to support her argument that summary judgment was improperly granted on its failure to train claim. In
 
 Foradori,
 
 an off-duty Captain D’s restaurant employee challenged a customer, Michael Foradori, to a fight.
 
 Id.
 
 at 481-82. The two had a fifteen to twenty minute loud and heated verbal argument inside the restaurant.
 
 Id.
 
 at 482. The manager heard and observed the confrontation. Rather than defusing the situation, the manager instead ordered the two outside and permitted a crowd, including em
 
 *727
 
 ployees and customers, to follow them outside.
 
 Id.
 
 The manager did not call the police or take other precautions. The cook believed a fight was about to occur and followed the crowd outside.
 
 Id.
 
 As soon as Foradori reached the edge of the parking lot, another restaurant employee (one not engaged in the earlier verbal argument) unexpectedly punched Foradori from behind.
 
 Id.
 
 at 491. Foradori’s fall from an elevated embankment rendered him unconscious and resulted in him breaking his neck.
 
 Id.
 
 at 482.
 

 ¶ 21. The
 
 Foradori
 
 court applied the restatements of agency and torts, concluding that the Mississippi Supreme Court would have applied similar principles if confronted with the same facts.
 
 [9]
 

 Id.
 
 at 486-88. Applying these principles, the Fifth Circuit found:
 

 Captain D’s had a duty to control its off-duty employees ... so as to protect patrons like Foradori from any foreseeable unreasonable risk of harm created by those employees, because those employees’ conduct occurred on Captain D’s premises, and the jury reasonably could have found that Captain D’s manager knew or had reason to know that she had the ability to control them, and knew or should have known of the necessity and opportunity for exercising such control.
 

 Id.
 
 at 492. In its analysis, the court further stated:
 

 [A]n employer who engages in an enterprise is under a duty to anticipate and to guard against the reasonably expected human traits and episodes of its employees within its industry to prevent undue risk of harm to third persons or to other employees; and is likewise required to make such reasonable regulations as the see or complexity of its business may require.
 

 Id.
 
 at 494. Under this authority, the Fifth Circuit held the district court properly submitted to the jury the issues of Captain D’s alleged failure to adequately train, supervise, and regulate its employees, as well as its alleged failure to control the actions of its employee.
 
 Id.
 
 at 491, 494-97. For present purposes, it is particularly significant that the
 
 Foradori
 
 court held that reasonable minds could differ over the question of whether Captain D’s acts or omissions resulted in a foreseeable harm.
 
 Id.
 
 at 496-97.
 

 ¶22. While not binding, Fifth Circuit decisions are generally regarded by our state appellate courts as highly persuasive authority.
 
 Lutz Homes, Inc. v. Weston,
 
 19 So.Sd 60, 64 n. 6 (Miss.2009). Even if
 
 Foradori
 
 was viewed as binding authority as to liability based on an employer’s failure to train, its facts are clearly distinguishable from those before us.
 

 ¶ 23. In
 
 Foradori,
 
 conflicting evidence existed as to whether, due to the loud commotion in the dining area of the restaurant, Captain D’s management knew or should have known that the escalating altercation created a risk of bodily harm to Foradori.
 
 Foradori,
 
 523 F.3d at 482. The on-duty manager claimed she thought the verbal argument in the restaurant was just “teenage horse-play.”
 
 Id.
 
 She testified that based on this belief, she ordered the two engaged in the argument outside and did not attempt to protect the restaurant patron or control her employee.
 
 Id.
 
 at 482-83. However, the cook, who had been further from the disturbance than the manager, contradicted the manager.
 
 Id.
 
 at 482. He testified it was apparent a
 
 *728
 
 fight was about to take place. Additionally, several witnesses, including an expert witness, provided support that Captain D’s failed to adequately regulate or train its employees.
 
 Id.
 
 at 493-95. Although Captain D’s had a work manual, which included instructions on training employees, several witnesses testified that restaurant managers had failed to comply with the applicable company rules.
 
 Id.
 
 at 493-94.
 

 ¶ 24. At issue in all of Foradori’s tort claims was whether the Captain D’s employee’s assault was the superceding and sole proximate cause of the patron’s injuries.
 
 Id.
 
 at 495-97. This inquiry hinged on the foreseeability of the employee’s actions.
 
 See id.
 
 at 495. The Fifth Circuit held that a jury question existed as to whether Captain D’s failure to train/supervise/regulate and its failure to control the actions of its employees resulted in a foreseeable harm.
 
 Id.
 
 at 496-97.
 

 ¶ 25. Here we are faced with a much different situation. In
 
 Foradori,
 
 it was undisputed that the employee “challenged Foradori to a fight in full view and hearing of [the restaurant manager] inside the restaurant for 15 to 20 minutest.]”
 
 Id.
 
 at 491. It was also undisputed that the manager ordered the two to go outside “without investigating, intervening or taking any precaution to protect Foradori.”
 
 Id.
 
 To the contrary, here the attack took place suddenly, and there were no allegations of management turning a blind eye or facilitating Holmes’s attack. Furthermore, there is no contradictory evidence of the car wash’s prior actual or constructive notice that an assault might take place. And Holmes has presented no arguable reason why the car wash should have done more to regulate employee behavior in light of the size and complexity of the business.
 

 ¶ 26. Holmes requests that this Court find a jury question exists, at least on the failure to train allegation, simply by virtue of the fact that a Campbell Properties’ employee attacked a patron with a baseball bat. Holmes argues that under
 
 Foradori,
 
 violent behavior by an employee is itself sufficient evidence of failure to train.
 
 [10]
 
 We disagree. This is not what the Fifth Circuit held in
 
 Foradori,
 
 and we are aware of no authority applying such a broad standard. In making this argument, Holmes mainly relies on the following passage in
 
 Foradori,
 
 which the Fifth Circuit quoted from the district court’s opinion:
 

 The evidence in this case appears to establish a widespread failure among multiple Captain D’s employees to behave in an appropriate manner in this case. Obviously, it is not proper behavior for a Captain D’s employee ..., off-duty or not, to approach a customer on restaurant premises in a hostile manner and to encourage him to fight. The fact that [the Captain D’s employee] apparently felt comfortable in behaving in such an improper manner on restaurant premises raises troubling questions regarding the level of training, supervision and discipline which existed at the Captain D’s franchise in question.
 

 Id.
 
 at 493. Though the Fifth Circuit included this passage from the district court, it made clear that its holding that a jury question existed on the issue of failure to train depended on the testimony of multiple managers and employees.
 
 Id.
 
 at 493-95. Such proof is undoubtedly lacking in the present case. We find the violent act of an employee standing alone is simply insufficient to defeat summary judgment on an allegation of failure to train.
 

 
 *729
 
 ¶27. Although there is no Mississippi case law directly on point, courts in other jurisdictions have generally recognized that specific evidence of an employer’s actual or constructive knowledge of its employee’s dangerous or violent tendencies is necessary in order to create a genuine issue of material fact on an improper training or supervision theory of liability.
 
 See State Farm Ins. Co. v. Cent. Parking Sys., Inc.,
 
 18 A.D.3d 859, 860, 796 N.Y.S.2d 665 (N.Y.App.Div.2005);
 
 Giles v. Shell Oil Corp.,
 
 487 A.2d 610, 613 (D.C.1985);
 
 see also Flores v. Autozone W., Inc.,
 
 161 Cal.App.4th 373, 74 Cal.Rptr.3d 178, 187 (2008) (finding summary judgment proper because physical attack by employee not causally connected to employer’s failure to train);
 
 Alexander v. A. Atlanta Autosave, Inc.,
 
 272 Ga.App. 73, 611 S.E.2d 754, 758-59 (2005) (finding summary judgment proper because no actual or constructive knowledge of employee’s tendency to engage in behavior relevant to injuries sustained);
 
 Armstrong Bus. Servs., Inc. v. AmSouth Bank,
 
 817 So.2d 665, 683 (Ala.2001) (finding summary judgment proper because incompetent act by employee is itself insufficient to create genuine fact issue).
 
 [11]
 
 This flows from the same logic behind our precedent holding that the mere occurrence of an accident is insufficient evidence to hold a premises owner liable.
 
 Cf. Byrne v. Wal-Mart Stores, Inc.,
 
 877 So.2d 462, 465 (¶ 6) (Miss.Ct.App.2003) (citing
 
 Sears, Roebuck & Co. v. Tisdale,
 
 185 So.2d 916, 917 (Miss.1966)). As our supreme court once stated: “[Ijnjury of itself confers no legal right; ... danger of itself is not negligence; and ... negligence of itself is not liability.”
 
 Campbell v. Willard,
 
 205 Miss. 783, 793, 39 So.2d 483, 484 (Miss.1949).
 

 ¶ 28. In the case before us, unlike
 
 Fo-radori,
 
 every indication is that the beating incident occurred in a matter of seconds. Campbell Properties contends the episode happened without warning, and the management of the car wash had no reason to know or anticipate its employee would behave in such a violent manner. There was no contradicting evidence of prior actual or constructive knowledge of Brooks’s violent nature. Nor is there any indication of any actual or constructive knowledge that an atmosphere of violence existed at the car wash. We are simply unable to locate any evidence from Holmes tending to show a fact issue for the jury to resolve.
 

 B. Summary Judgment
 

 ¶29. Holmes next argues that because Campbell Properties failed to show the lack of genuine issues of material fact, particularly on its failure to train allegation, the burden never shifted back to Holmes to show the presence of genuine issues of material fact. However, “[w]here a party opposes summary judgment on a claim or defense [on] which that party will bear the burden of proof at trial, and when the moving party can show a
 
 complete failure of proof on
 
 an essential element of the claim or defense, then all other issues become immaterial, and the moving party is entitled to judgment as a matter of law.”
 
 Grisham,
 
 519 So.2d at 416;
 
 see also Gallo
 
 
 *730
 

 way v. Travelers Ins. Co.,
 
 515 So.2d 678, 683-84 (Miss.1987) (holding summary-judgment properly granted for complete failure of proof on an essential element of nonmovant’s case). Campbell Properties highlighted Holmes’s lack of proof on any of its claims. Thus, the burden shifted to Holmes to provide evidence supporting her allegations. Holmes failed to respond with any probative evidence to support the various claims concerning this issue. Therefore, we find the trial court properly granted summary judgment with respect to Holmes’s claims that Campbell Properties failed to train/regulate/supervise its employees or failed to control their actions.
 

 CONCLUSION
 

 ¶ 30. Since Holmes failed to offer any credible evidence to show that Brooks’s assault was reasonably foreseeable, the circuit court properly granted summary judgment on the premises liability issue. Regarding the other tort claims, Holmes’s reliance on
 
 Foradori
 
 is misplaced, and the present case is clearly distinguishable. Also, Holmes failed to sufficiently support these allegations with specific facts showing genuine issues for trial. Therefore, the circuit court properly granted summary judgment in favor of Campbell Properties.
 

 ¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ„ CONCUR.
 

 [1]
 

 . According to an excerpt from the trial transcript in the criminal case against Brooks, which was attached to Campbell Properties’ summary judgment motion, the bat had been left at the car wash by a customer and was being held in the car wash's office.
 

 [2]
 

 . Hereinafter, any reference to "Holmes” is to the administratrix of the estate, Corine Holmes, unless otherwise indicated.
 

 [3]
 

 . Holmes later filed an amended complaint, which did not include a failure to warn claim.
 

 [4]
 

 . We note that Holmes has not pursued many of these claims on appeal. By not raising several of the claims listed above, Holmes has waived these claims on appeal.
 
 See A.B. ex rel. C.D. v. Stone County Sch. Dist.,
 
 14 So.3d 794, 797 n. 1 (Miss.Ct.App.2009) (claim procedurally barred for failure to make argument on appeal).
 

 [5]
 

 .The circuit judge entered a written judgment reflecting his decision, which included an express determination that there was no just reason for delay in entering a final judgment as to fewer than all parties to the action, as required by Mississippi Rule of Civil Procedure 54(b).
 

 [6]
 

 . Likewise, the trial court correctly found Holmes could not establish the elements of its premises liability claim regardless of whether the decedent was deemed an invitee or licensee.
 

 [7]
 

 . Although Holmes primarily argues Campbell Properties failed to adequately train Brooks, this section also includes a discussion of other claims, including the business's failure to have in place adequate regulations, failure to supervise, and failure to control the actions of its employees. All of these theories are negligence-based.
 
 See Foradori v. Harris,
 
 523 F.3d 477, 484 (5th Cir.2008).
 

 [8]
 

 . We note also that "failure to train” was not one of the individual counts specifically listed in the amended complaint. Rather, the allegation was included in one sentence under the heading "Negligent Hiring & Negligent Retention,” alleging that Campbell Properties had a duty to "properly train” Brooks.
 

 [9]
 

 . The Mississippi Supreme Court had approved the use of one of these restatement sections in the context of negligent supervision of an activity.
 
 See Tillman ex rel. Migues v. Singletary,
 
 865 So.2d 350, 353 (¶¶ 12-14) (Miss.2003).
 

 [10]
 

 . Holmes's entire argument rests on the assertion that an employee's act of violence is sufficient evidence of failure to train. Holmes cites no other specific reason why a jury question exists on this issue.
 

 [11]
 

 . We note the
 
 Foradori
 
 court held that a showing of a dangerous propensity is not required where the employer "knows or should know [its employee] to be engaging in conduct creating an unreasonable risk of harm to customers or others on its premises.”
 
 Foradori,
 
 523 F.3d at 492. However, just as there has been no showing of Brooks's dangerous propensity, there is no indication that Campbell Properties knew or should have known Brooks was engaging in conduct creating an unreasonable risk to its patrons. In fact, there is no evidence of any such conduct by Brooks prior to the attack itself. Campbell Properties did not watch a conflict escalate before their eyes and, thereafter, fail to take precautions, as did the restaurant management in
 
 Foradori.