# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00574-COA

**TNHYIF REIV GOLF LLC**                                              **APPELLANT**

**v.**

**FORREST COUNTY, MISSISSIPPI**                                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/03/2017 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL J. BENTLEY |
| | SIMON T. BAILEY |
| ATTORNEY FOR APPELLEE: | DAVID B. MILLER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED: 11/06/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     TNHYIF REIV GOLF LLC (True North) appeals the circuit court's entry of summary judgment in favor of Forrest County regarding the County's tax assessments of a student-housing complex for tax years 2014, 2015, and 2016.  We reverse and render.

### FACTS AND PROCEDURAL HISTORY

¶2.     True North owns the Boardwalk at Dewberry Landing (Dewberry), a 150-unit student-housing complex located in Hattiesburg.  The Dewberry operates as an offsite college dormitory for students attending the University of Southern Mississippi and Pearl River Community College.

¶3.     In 2014, the County appraised the Dewberry at $13,230,640.  It then assessed the

Dewberry at 15% of this appraised value, yielding an assessed value of $1,984,597 that, when multiplied by the total millage of .17349, resulted in a total tax liability of $344,307.73.

¶4. In 2015, the County appraised the Dewberry at $13,757,980. It then assessed the Dewberry at 15% of this appraised value, yielding an assessed value of $2,063,698 that, when multiplied by the total millage of .17758, resulted in a total tax liability of $366,471.48.

¶5. In 2016, the County appraised the Dewberry at $13,784,110. It then assessed the Dewberry at 15% of this appraised value, yielding an assessed value of $2,067,617 that, when multiplied by the total millage of .18041, resulted in a total tax liability of $373,018.80.

¶6. True North objected to the County's tax assessments each year. However, the Board of Supervisors rejected each objection and gave its final approval to the Forrest County tax rolls for the applicable tax years. The tax rolls were submitted to and approved by the Mississippi Department of Revenue.

¶7. True North filed a timely appeal of the decisions of the Board of Supervisors to the Forrest County Circuit Court, which consolidated the appeals.

¶8. True North and the County filed cross-motions for summary judgment on the issue of the true value of the Dewberry. True North claimed that the true value of the Dewberry was $6,700,000, based on the property's actual data and income. The County claimed that "[t]he challenged assessments [we]re properly based on the subject property's income as modeled with reference to typical market properties." Both parties relied on the testimony and analysis of their respective expert appraisers: Tracy Wofford for True North and Bruce Templeton for the County.

2

¶9. After a hearing, the circuit court issued a memorandum opinion and found "that the law allow[ed] the County tax assessor to use market[-]typical properties for valuation." The circuit court concluded that "the County's assessments of the Dewberry for tax years 2014, 2015[,] and 2016 reflect the true value of the Dewberry." As a result, the circuit court entered a judgment that granted the County's motion for summary judgment and denied True North's motion for summary judgment. It is from this judgment that True North now appeals.

## STANDARD OF REVIEW

¶10. "[W]e review the circuit court's decision to grant summary judgment de novo." *Bennett v. Highland Park Apartments, LLC*, 170 So. 3d 450, 452 (¶4) (Miss. 2015). "[S]ummary judgment is proper only where there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Id*. "Because the movant must be entitled to a judgment as a matter of law, a summary-judgment motion is usually limited to questions of law, which this Court reviews de novo."[1] *Id*.

## ANALYSIS

¶11. "Taxation shall be uniform and equal throughout the State." Miss. Const. Art. 4, § 112. "Property shall be assessed for taxes under general laws, and by uniform rules, and in proportion to its true value . . . ." *Id*. Mississippi Code Annotated section 27-35-50(1) (Rev. 2005) defines "[t]rue value" as "market value, cash value, actual cash value, proper value and value for the purposes of appraisal for ad valorem taxation." In ascertaining true

[1] The parties agree that "[t]heir dispute over the true value of the [Dewberry] is a question of law; there are no disputes of fact to be resolved by the Court."

3

value, the county tax assessor shall consider the income capitalization approach, the cost approach, and the market data approach.[2] Miss. Code Ann. § 27-35-50(2). "For differing types of categories of property, differing approaches may be appropriate." *Id*. "The choice of the particular valuation approach or approaches to be used should be made by the assessor upon a consideration of the category or nature of the property, the approaches to value for which the highest quality data is available, and the current use of the property." *Id*.

¶12.    Here, the County offered a valuation of the Dewberry based on the modified cost approach, while True North offered a valuation based on the income capitalization approach. Interestingly, both parties agree that the cost approach was not the best approach to use. In fact, the County conceded that the income capitalization approach, used by True North, is appropriate for an income-producing property such as the Dewberry and is the method for which the most data is available. Yet, despite this concession, the circuit court adopted the County's valuation based on the modified cost approach.

¶13.    When a taxpayer appeals a county's ad valorem assessment of its property, the circuit court must make a de novo determination of the property's true value. Miss. Code Ann. § 11-51-77 (Rev. 2012) (providing that when a taxpayer appeals the assessment of taxes, the "controversy shall be tried anew in the circuit court"). Here, the record reflects that the circuit court deferred to the County's valuation since the circuit court was "not convinced the County acted outside of the Constitutional mandate, or violated a statute, in using market typical property in its analysis." However, such deference to the County's appraisal is not

---

[2] The market data approach is also referred to as the sales comparison approach.

permitted when an individual taxpayer takes a de novo appeal challenging the assessment of the property.

¶14. In such an appeal, "it [i]s not the duty of the [court] to expressly find either for the City or the taxpayer;" instead, the circuit court's role is "to determine the taxable value of the property" at issue in the appeal. *Lavecchia v. Mayor & Alderman of Vicksburg*, 20 So. 2d 831, 833 (Miss. 1945). Thus, the issue is not whether the County's valuation techniques were permissible simply because they did not violate a particular constitutional or statutory provision. Instead, the issue is to determine the true value of the Dewberry. In other words, as noted by True North, "the stage is cleared[,] and both parties—the taxpayer and the county—must present evidence to support their proposed fair market value."

¶15. True North offered Wofford as its expert appraiser. Wofford relied primarily on the income capitalization approach, but also considered the sales comparison approach. Both approaches confirmed that $6.7 million was an appropriate true value for the Dewberry. Importantly, in reaching the true value, Wofford considered and used the Dewberry's individual characteristics and actual income.

¶16. The County offered Templeton as its expert appraiser. Templeton acknowledged that Wofford's "appraisal practice [wa]s fine," but disagreed with her use of actual income. While Templeton agreed there were differences in the various similarly-situated student-housing properties, including operating expenses, vacancy rates, and gross income, he opined that the Dewberry's actual income should not be used unless it is typical to the market. Because Templeton found that the Dewberry's actual data (i.e., expenses, vacancy rates, and

5

income) was not market typical, he did not consider it in his valuation of the property. Instead, Templeton used modeled, market typical data to ascertain the property's true value.

¶17. Miss. Code Ann. § 27-35-50(3) calls for the valuation of individual properties, not for the valuation of a hypothetical property that represents the "typical" characteristics of all properties in the same class.[3] Indeed, "[o]ur public assessors are directed to consider certain specific factors affecting value of subject property and are then told to consider 'any other circumstances that tend to affect its value.'" *Rebelwood, Ltd. v. Hinds County*, 544 So. 2d 1356, 1363 (Miss. 1989) (quoting Miss. Code Ann. § 27-35-50(3)), *superseded on other grounds by statute as stated in Willow Bend Estates LLC and Woodyard Gardens LLC v. Humphreys Cty. Bd. of Supervisors*, 166 So. 3d 494, 498-99 (¶¶13-15) (Miss. 2013). After all, a willing buyer would not pay the same price for all properties in the same class, irrespective of their individual characteristics, nor would a willing seller accept the same price for every property without regard for its individual characteristics. In other words, not all properties in the same class face identical circumstances that would tend to affect value. Accordingly, the individual property characteristics, including actual income, must be included in any reasoned determination of fair market value. We find the circuit court erred in disregarding the Dewberry's individual characteristics.

---

[3] Specifically, section 27-35-50(3) states that in determining the true value of property, factors to be taken into consideration are:

> the proximity to navigation; to a highway; to a railroad; to a city, town, village or road; and any other circumstances that tend to affect its value, and not what it might bring at a forced sale but what the owner would be willing to accept and would expect to receive for it if he were disposed to sell it to another able and willing to buy.

CONCLUSION

¶18.    We find the circuit court erroneously adopted the County's true value determination of the Dewberry based on an admittedly inappropriate approach. The record clearly indicated that True North demonstrated that the County's valuation was inadequate and overvalued the Dewberry by roughly double its actual worth.

¶19.    Conversely, True North's true value determination was based on the income capitalization approach, which both parties agreed was the best approach for the property. Moreover, True North's valuation included the Dewberry's individual property characteristics and actual income, which we find should have been considered and used in ascertaining the true value of the property.

¶20.    For these reasons, we find the circuit court erred in its true value determination of the Dewberry and reverse and render judgment in favor of True North, ascertaining the true value of the Dewberry to be $6,700,000.

¶21.    **REVERSED AND RENDERED.**

        **LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. TINDELL, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., NOT PARTICIPATING.**